UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHRISTOPHER GORDON,

              Plaintiff,                      **NOT FOR PUBLICATION**
                                                        **MEMORANDUM & ORDER**
-against-                                      10-CV-5148 (CBA)(LB)

THE CITY OF NEW YORK, NEW YORK CITY
POLICE OFFICER CARLOS PERSALTA, Shield #
30640, TD BANK, ELLIOT LOPEZ, CURTIS
HERBERT, and ISAAC DUNCAN,

              Defendants.
----------------------------------------------------------------x
AMON, Chief United States District Judge.

      Plaintiff Christopher Gordon ("Gordon"), <u>pro se</u>, has filed suit pursuant to 42 U.S.C. §

1983 and state law, alleging various violations of his constitutional rights—primarily false arrest

and malicious prosecution arising out of his arrest and detention in November 2007 on suspicion

that he attempted to cash stolen checks at a TD Bank branch.  At the time of this first arrest,

Gordon was not prosecuted, but he was later indicted and convicted of larceny and other crimes

based on the events at TD Bank.  Defendants City of New York and Officer Carlos Peralta now

move to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Also before the Court is the Report and Recommendation (R&R) of the Honorable

Lois Bloom, United States Magistrate Judge, recommending that the Court dismiss the claims

against the other four defendants because the amended complaint did not properly allege that

they acted under color of state law.

      For the reasons stated below, the motion to dismiss filed by the City of New York and

Officer Peralta is granted in part and denied in part.    The Court also adopts the well-reasoned

R&R of the Magistrate Judge, and the claims against the remaining four defendants are dismissed in full.

I.     BACKGROUND

Gordon's factual narrative is at times difficult to follow, but the following facts appear to be alleged in the First Amended Complaint ("Compl.").  On November 2, 2007, Gordon claims that he accompanied a co-worker, defendant Curtis Herbert, to a branch of Commerce Bank (since acquired by TD Bank, as it will be referred to in this Order) to withdraw payments for construction work that had been contracted to Herbert and informally sub-contracted to Gordon. (Compl. ¶ 8.)  It appears that some time earlier, Herbert had attempted to deposit checks allegedly signed by Isaac Duncan and drawn on Duncan's account at Chase Bank, but TD Bank placed the funds on hold due to a suspicion of misconduct.  TD Bank then contacted Duncan, who claimed that the checks were stolen and his signature on them forged.  (Compl. ¶¶ 33-34; Pl. Opp., Ex. 4.)  Accordingly, when Gordon and Herbert arrived at TD Bank to collect the funds, they were detained by bank staffers, who called 911 to report that the two men were attempting to cash forged checks.  Defendant Officer Peralta responded to the call and arrested Gordon and Herbert on the scene.  (Compl. ¶¶ 8, 30.)  Gordon was charged with Grand Larceny in the Second Degree, Identity Theft in the First Degree, and Forgery in the Second Degree.  (Compl. ¶ 8.)  Gordon's complaint asserts that he was detained until November 4, 2007, when he was brought before a judge in the Kings County Criminal Court who promptly dismissed the case against Gordon for lack of evidence and released him.  (Compl. ¶9-10.)  The complaint also states that upon his release, he was "without any further knowledge . . . of a continuing criminal investigation" against him.  (Compl. ¶ 10.)

Gordon's Memorandum in Opposition to the Defendants' Motion to Dismiss tells a somewhat different story of the events of November 2-4, 2007.  Gordon seems to claim that shortly after his arrest on November 2, the District Attorney's Office notified police that they were declining to prosecute Gordon for the events at TD Bank due to lack of evidence connecting him to the allegedly stolen checks.  Gordon claims that the DA's Office instructed the police to release him, but that Officer Peralta nonetheless "unlawfully" and "extrajudicially" detained him for over 48 hours until November 4.[1]  (See Pl. Opp. at ¶ 3, 9, 11.)  Gordon simultaneously seems to maintain that he "was presented before the Kings County Criminal Court on November 4, 2007" and the case was dismissed at that time.  (Pl. Opp. ¶ 6.)  In any event, Gordon's combined account indicates that on November 2-4, 2007, any charges stemming from the TD Bank events were dropped, he was not arraigned, and he was released by November 4 with no knowledge of any pending matters related to that incident.[2]

The prosecution against Herbert, however, continued.  (Compl. ¶ 58.)  Gordon claims that Herbert later entered into an agreement with the DA's Office whereby he agreed to testify against Gordon in exchange for the charges against Herbert being dismissed.  (Compl. ¶ 58.)  Accordingly, charges against Gordon were newly submitted to the grand jury in March 2008, and testimony was presented from Herbert, Officer Peralta, and representatives from TD Bank and Chase Bank.  (Compl. ¶ 13.)  Gordon claims he was then indicted for the previously dismissed charge of Grand Larceny in the Second Degree, along with new charges of Grand Larceny in the Third Degree, Criminal Possession of a Forged Instrument, and Petit Larceny.  (Compl. ¶ 13.)

---

[1] It appears that Gordon is making this new allegation in response to the "Declined Prosecution" form from the DA's Office, which the defendants submitted as an exhibit to their motion to dismiss.  (See O'Flynn Aff., Ex. E.)

[2] Gordon also alleges that the Assistant District Attorney, without his knowledge, presented the case to a grand jury on December 6, 2007, but the grand jury did not return an indictment, and the case was again dismissed and sealed. (Compl. ¶¶ 11-12, 21.)

3

Gordon was subsequently "re-arrested" on September 23, 2008 pursuant to this indictment.

(Compl. ¶ 21.)

Gordon's case proceeded to trial and on September 4, 2009, a jury convicted him of

Grand Larceny in the Second Degree, Grand Larceny in the Third Degree, Petit Larceny, and

two counts of Criminal Possession of a Forged Instrument.  (See Compl., Ex. H; Pl. Opp., Ex. 1.;

O'Flynn Decl., Ex. D.)


## II.   DEFENDANTS CITY OF NEW YORK AND OFFICER PERALTA'S MOTION TO DISMISS

### A.   Standard of Review

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007)).  A complaint that contains only "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Neither

will a complaint that contains only "naked assertion[s]" without "further factual enhancement."

Id. at 557.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint.

129 S. Ct. at 1950.  First, courts can "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth."  Id.  Second, they can then

identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an

entitlement to relief."  Id.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it

4

asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  A court's

consideration on a motion to dismiss is "limited to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40,

44 (2d Cir. 1991).  For example, "courts routinely take judicial notice of documents filed in other

courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish

the fact of such litigation and related filings."  Kramer v. Time Warner Inc., 937 F.2d 767, 774

(2d Cir. 1991); see Staehr v. Hartford Financial Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir.

2008).

Where the plaintiff appears pro se, a court will construe his pleadings liberally and will

interpret them "to raise the strongest arguments that they suggest." Cruz v. Gomez, 202 F.3d

593, 597 (2d Cir. 2000).  However, "[t]he duty to liberally construe a [pro se] plaintiff's

complaint is not the equivalent of a duty to rewrite it."  Kirk v. Heppt, 532 F.Supp.2d 586, 590

(S.D.N.Y.2008) (internal quotation marks and alterations omitted); see also Chavis v. Chappius,

618 F.3d 162, 170 (2d Cir. 2010) ("[T]hough we are obligated to draw the most favorable

inferences that [a pro se] complaint supports, we cannot invent factual allegations that he has not

pled.")

### B.    Discussion

As an initial matter, Gordon does not appear to dispute the proposition, asserted in the

defendants' motion, that he can bring neither a false arrest nor a malicious prosecution claim

based on his arrest on September 23, 2008, because that arrest directly resulted in a conviction.[3]

---

[3] While Gordon repeatedly refers to this as an "illegal conviction," (Compl. ¶ 15), this assertion appears to be his
own personal belief, and he never asserts that this conviction has been overturned or vacated on appeal, or that he
has filed a habeas petition.  Instead, he refers to it as his "current" conviction, and argues that it should have no
bearing on his claims arising out of the November 2, 2007 arrest.  (Pl. Opp. ¶ 12.)  Regardless, as discussed further

See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (malicious prosecution claim requires that proceedings terminated in the plaintiff's favor); Cameron v. Fogarty, 806 F.2d 380, 387-89 (2d Cir. 1986) (plaintiff cannot recover for false arrest or malicious prosecution if he was convicted of the crime for which he was arrested).  Rather, the amended complaint states, and Gordon's opposition papers repeatedly emphasize, that he brings his false arrest and malicious prosecution claims based only on the November 2, 2007 arrest.  (See Compl. ¶ 7; Pl Affirmation ¶ 3; Pl. Opp. ¶ 2, 3, 5, 9, 10, 12, 13, 16, 21.)  Accordingly, it is only on this former arrest that the Court will focus its analysis, and any false arrest or malicious prosecution claims related to the September 23, 2008 arrest and prosecution are deemed withdrawn.  To the extent Gordon's complaint implies that he is bringing other claims related to his trial and conviction, they are dealt with in Section II.B.4.d below.

### 1.    Claims against the City of New York

The Court observes at the outset that Gordon's allegations against the City of New York fail to satisfy the requirements of Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978).  In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant, a plaintiff must show the existence of an officially adopted policy or custom, and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker."  City of Oklahoma v. Turtle, 471 U.S. 808,

---

infra, Gordon cannot bring a § 1983 claim that would necessarily imply the invalidity of a standing conviction for which he was serving his sentence when he filed this action.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Thus, any argument that the alleged invalidity of the conviction should lift the bar to challenging the arrest and prosecution that preceded it cannot lie.

823-24 (1985).  Stated differently, the plaintiff must demonstrate that the municipality was the "moving force" behind the alleged injury.  Brown, 520 U.S. at 404.

Gordon's complaint does not allege the existence of a municipal policy or custom at all.  In his opposition memorandum, Gordon occasionally uses the phrase "common policy and practice," (e.g. Pl. Opp. ¶¶ 17, 19, 20.), but this allegation is unsupported by anything other than the facts of what occurred in his particular case.  See Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); Santiago v. Campisi, 91 F. Supp. 2d 665, 676 (S.D.N.Y. 2000).  Moreover, mere conclusory references to a policy or custom, with no supporting facts, will not suffice to state a claim of § 1983 municipal liability.  See Ricciuti, 941 F.2d at 124 ("[O]ur prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory."); 5 Borough Pawn, LLC v. City of New York, 640 F. Supp. 2d 268, 299 (S.D.N.Y. 2009) (dismissing Monell claim because the plaintiffs' "assertion that the City has an unconstitutional policy is based on nothing more than their unsupported supposition"); Brodeur v. City of New York, 2002 WL 424688, at *6 (S.D.N.Y. 2002) .

Accordingly, since Gordon's complaint is devoid of factual support for his references to a municipal policy, the § 1983 claims against the City of New York are dismissed.  The remaining § 1983 causes of action will be analyzed only as pertains to Officer Peralta.

### 2.    False Arrest

Gordon has brought a claim for false arrest and false imprisonment, claiming that his November 2007 arrest was not supported by probable cause, and that he was unlawfully detained

by the police for two days.  The defendants argue that Gordon's false arrest claim arising out of the events of November 2, 2007 is barred by his eventual conviction for those crimes.

A § 1983 claim for false arrest or false imprisonment, based on an individual's right to be free from unreasonable seizures, is substantially the same as a claim for false arrest under New York law.  Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003).  Such a claim requires the plaintiff to show (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).  The existence of probable cause to arrest renders an arrest privileged and "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir.2006) ("[T]he existence of probable cause is an absolute defense to a false arrest claim.").

As noted above, it has been repeatedly held in this circuit that in an action for false arrest, "the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested," because the conviction is treated as conclusive evidence of probable cause to arrest.  Cameron, 806 F.2d at 387; Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (conviction not reversed on appeal is conclusive evidence of probable cause to arrest); Jones v. King, 2011 WL 4484360, at *7 (S.D.N.Y. 2011) ("Plaintiff's claim of false arrest is barred by the existence of probable cause for the arrest, which is established as a matter of law by his conviction."); Kneitel v. Danchuk, 2007 WL 4441224, at *5 (E.D.N.Y. 2007) ("A prosecution and conviction, if not overturned, is conclusive evidence that an arrest was supported by the requisite probable cause.")  The plaintiff need not be convicted of every crime for which he was arrested for this bar to apply; the existence of a valid conviction for any of the crimes underlying the arrest will

foreclose a later false arrest claim.  Jones, 2011 WL 4484360, at *7; Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 335 (E.D.N.Y. 2006) (citing Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir.2006)); see DeVito v. Barrant, 2005 WL 2033722, at *4 (E.D.N.Y. 2005).

The defendants argue that because Gordon's arrest on November 2, 2007 was based on the same charges for which he was eventually convicted, the above rule should still bar him from pursuing a false arrest claim, even though Gordon was released at that time, and it was not until 2008 that Gordon was indicted and convicted.  This argument raises the question of whether the Cameron rule only bars a false arrest claim based on the arrest that immediately preceded the conviction, or if it also forecloses a false arrest claim based on an earlier, unfruitful arrest arising out of the same conduct.  The language and logic of Cameron would seem to apply to any claim for false arrest when the plaintiff is eventually convicted of an offense underlying that arrest, since Cameron expressly rejected the proposition that a "premature" arrest is actionable when it nonetheless produces a conviction:

> The fact of conviction means that the plaintiff was not entitled to escape arrest entirely and that the arrest was simply premature. Though the right to be free from arrest without probable cause is substantial, the injury caused solely by prematurity of arrest is, of itself, insubstantial. . . . [W]e conclude that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires that § 1983 doctrine be deemed . . . to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.

Cameron, 806 F.2d at 388-89.  The Court concludes that, at least in the circumstances presented here, it would be difficult to draw a principled distinction between Gordon's two arrests wherein his conviction would prevent a false arrest claim based on the second arrest, but would allow a claim based on the first, even though the first arrest arose out of the same conduct.  The Court

thus finds, based on <u>Cameron</u> and its lineage, that Gordon's conviction bars his claim that he was arrested without probable cause at TD Bank on November 2, 2007.

This conclusion, however, does not end the inquiry.  In Gordon's opposition papers, he now appears to be alleging that shortly following his arrest, the DA's Office told Officer Peralta that they were not pursuing any charges against Gordon because of a lack of evidence connecting him to the stolen checks, and instructed that Gordon should be released from custody.  Gordon claims that Officer Peralta nonetheless detained Gordon unjustifiably and without probable cause for over 48 hours until a judge released him on November 4.  Gordon also contends that at that time, "there were no warrants to legally detain him."  (Pl. Opp. ¶ 3, 17.)  Given a court's duty to liberally construe <u>pro se</u> pleadings, the Court believes it should view these new facts as amending the allegations of the complaint.  <u>See</u> <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010); <u>Cusamano v. Sobek</u>, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009).

On their face, these allegations would appear to state a freestanding claim for false imprisonment that is separable from the initial arrest at TD Bank—that is, a claim that Officer Peralta kept Gordon in police custody, without probable cause, for some reason beyond the TD Bank charges.  Furthermore, Gordon's allegations appear to state a claim for unreasonable detention, based his assertions that he was unreasonably held following a warrantless arrest for over 48 hours before being presented to a judge.  <u>See</u> <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 53, 56 (1991) (following warrantless arrest, Fourth Amendment requires "prompt" judicial probable cause determination without "unreasonable delay"; over 48 hours presumptively unreasonable); <u>Bryant v. City of New York</u>, 404 F.3d 128, 136-39 (2d Cir. 2005) (analyzing § 1983 claim based on "prolonged . . . postarrest detention" under Fourth Amendment standards, and upholding dismissal because "the duration of plaintiffs' detentions did not come

close to the presumptively unreasonable 48-hour mark"); Wang v. Vahldieck, 2012 WL 92423, at *8 (E.D.N.Y. 2012) (upholding § 1983 claim for unreasonable detention based on allegation that defendant "deliberately delayed processing of [plaintiff's] paperwork in order to maximize the length of her detention"); Richardson v. Providence, 2011 WL 3701887, at *8 (E.D.N.Y. 2011) (plaintiff's allegations that "defendants detained him capriciously and arbitrarily" following warrantless arrest stated claim for unreasonable detention under § 1983); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 199-200 (S.D.N.Y. 2001) (finding evidence presented at trial sufficient to support jury's verdict on § 1983 claim for unreasonable detention based on plaintiff's 27-hour detention following arrest).

Moreover, the defendants' Reply concedes that the DA's Office declined prosecution for lack of evidence on November 2, and that Gordon was nonetheless detained for some additional period of time. The defendants argue that Gordon "was not held pursuant to the charges dropped by the prosecution on November 2," but on some other outstanding warrant. (Def. Reply at 3.) In support of this assertion, the defendants have submitted a document from the New York Police Department's booking system dated November 2, 2007 (Gordon's "OLPA History"). Beyond urging the existence of this unspecified "outstanding warrant," the defendants do not offer any other arguments for why Gordon's claims related to this period of detention should be dismissed as a matter of law at this time. (Def. Reply at 3-4.)

The Court does not believe it is appropriate to consider the "OLPA History" document or the warrant it references on a motion to dismiss, since it is not a public filing from another court of which this Court may take judicial notice, but is rather more akin to a police report that is not properly considered at this stage. See Crews v. County of Nassau, 2007 WL 4591325, at *6 (E.D.N.Y. 2007) (declining to take judicial notice of "non-judicial documents (such as police

reports)" that were not appended to the complaint on a motion to dismiss).  In any event, this document is far too abbreviated to provide any clear indication of why Gordon was detained. Thus, given the lack of factual clarity, and in light of the defendants' concession that Gordon was held by police for some period of time for charges unrelated to the TD Bank events, the Court will allow § 1983 claims for false imprisonment and unreasonable detention against Officer Peralta to survive at this time.

Accordingly, the Court will grant the motion to dismiss the claim that Gordon was arrested without probable cause for forgery and larceny at TD Bank on November 2, 2007, but will deny the motion to dismiss the claims for false imprisonment and unreasonable detention against Officer Peralta arising out of Gordon's alleged detention from November 2-4, 2007, following the decision by the DA's Office to not pursue charges based on the TD Bank incident.

### 3.      Malicious Prosecution

Gordon also brings a malicious prosecution claim based on the fact that after his first arrest, any charges arising out of the TD Bank events were dropped by the DA's Office and/or dismissed by a judge.  The defendants argue that Gordon cannot maintain any claim for malicious prosecution based on those events, because he suffered no post-arraignment deprivation of liberty.  The Court agrees with the defendants.

Like a claim of false arrest, the elements of a malicious prosecution claim pursuant to 42 U.S.C. § 1983 are drawn from state law.  Boyd, 336 F.3d at 75; Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  To succeed on a claim of malicious prosecution, the plaintiff must prove four elements: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding terminated favorably to the plaintiff, (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously.  Rothstein v. Carriere, 373 F.3d 275, 282 (2d

Cir. 2004); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  He must also prove a

fifth element, which comes from the federal constitution: "a sufficient post-arraignment liberty

restraint to implicate the plaintiff's Fourth Amendment rights."  Rohman v. NYC Transit

Authority, 215 F.3d 208, 215 (2d Cir. 2000); see also Singer v. Fulton County Sheriff, 63 F.3d

110, 116 (2d Cir.1995) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim

under § 1983 must . . . show some deprivation of liberty consistent with the concept of

'seizure.'").  "The essence of malicious prosecution is the perversion of proper legal

procedures."  Id. at 117 (quoting Broughton v. State of New York, 373 N.Y.S.2d 87, 93 (1975)).

Thus, where the plaintiff's claim arises out of a warrantless arrest, he cannot bring a malicious

prosecution claim based only on pre-arraignment events, since there have been no actions taken

pursuant to judicial process.  Id. (holding that "[plaintiff's] arrest cannot serve as the predicate

deprivation of liberty because it occurred prior to his arraignment and without a warrant, and

therefore was not pursuant to legal process."); see Holley v. County of Orange, 625 F. Supp. 2d

131, 142 (S.D.N.Y. 2009).

According to Gordon, he was arrested without a warrant on November 2, 2007 based on

the 911 call from TD Bank, but the DA's Office declined to prosecute him on those arrest

charges.  He then claims he was nonetheless detained by the police until November 4, when he

was brought before a judge for the first time, and any charges were dismissed.  (Compl. ¶¶ 8, 27,

28, 30; Pl. Opp. ¶¶ 2-6, 9.)  He makes no allegation that he was arraigned or that any prosecution

was commenced at that time; in fact, his account insists upon the opposite—that the police

detained him "extrajudicially," in contravention of the DA's instructions, and that upon his initial

appearance a judge immediately ordered his release.  Gordon himself refers to his detention as

"pre-arraignment incarceration."  (Pl. Opp. ¶ 3.)  Further, he emphasizes that he was unaware of

any continued investigation into his involvement at TD Bank until he was "re-arrested" in September 2008 following a grand jury indictment of which he was also unaware.  It is thus clear that Gordon has not alleged that any judicial process was commenced against him on November 2-4, 2007, or that there was any arraignment or post-arraignment restraint on his liberty at that time.[4]  The proper avenue for redressing Gordon's complaints that the police improperly detained him is grounded in false arrest or false imprisonment, as discussed above.

Accordingly, Gordon's malicious prosecution claim against Officer Peralta is dismissed.

### 4.   Other § 1983 Claims

Although the defendants have construed Gordon's complaint as only bringing false arrest and malicious prosecution claims under § 1983, Gordon's opposition memorandum makes reference to a few other claims that he believes himself to be asserting that have not been addressed by the defendants.  Given that, pursuant to the in forma pauperis statute under which Gordon brings this action, the Court must dismiss a claim if it "is frivolous or malicious" or "fails to state a claim on which relief may be granted," the Court will address why these residual federal claims must be dismissed.  28 U.S.C. § 1915(e)(2)(B).

### a)   *Malicious Abuse of Process*

Gordon argues that an "abuse of process claim lies against the defendants as each defendant aided to each other employing regularly issued legal process to compel the performance of the severely prejudicial conduct in violation of plaintiff's fundamental rights."

---

[4] The Court notes that although the defendants have made reference to an outstanding (and seemingly unrelated) warrant that may have been the basis for Gordon's detention, Gordon's submissions insist that there was no warrant involved in his detention (e.g. Pl. Opp. ¶ 3), and the Court accepts that allegation for purposes of this motion.  Thus, Gordon has never offered any facts to suggest that he is bringing a malicious prosecution claim attacking a judicially issued warrant, cf. Singer, 63 F.3d at 117, but has always maintained that his claim is premised on the charges related to his warrantless arrest at TD Bank, for which there was never an arraignment.

(Pl. Opp. ¶ 8.)  This appears to be an attempt to state a claim for malicious abuse of process under § 1983.  Any such claim must be dismissed.

"The torts of malicious prosecution and abuse of process are closely allied."  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  Whereas malicious prosecution concerns the improper issuance of process, malicious abuse of process concerns "the improper use of process after it is regularly issued."  Id. (internal quotations omitted).   Like malicious prosecution, state law provides the elements of a malicious abuse of process claim brought pursuant to § 1983.  Id.  "In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Id.

As already noted in the Court's discussion of the malicious prosecution claim, Gordon has made no allegations that his November 2007 arrest resulted in any "regularly issued legal process," since the charges were dropped and he was released without any arraignment.  Moreover, Gordon has not adequately alleged the "collateral objective" element of the claim.  To satisfy this element, a plaintiff must allege "not that the defendant acted with an improper motive, but rather an improper purpose – that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" Douglas v. City of New York, 595 F. Supp. 2d 233, 344 (S.D.N.Y. 2009) (quoting Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003)); see also Conte v. County of Nassau, 2010 WL 3924677, at *18 (E.D.N.Y. 2010).  Here, Gordon states that "the defendant's objective was to collaterally obtain the unconstituted conviction."  (Pl. Opp. ¶ 8.)  This amounts only to an allegation that the defendants acted out of a desire to see Gordon convicted, which is not a collateral objective.

Accordingly, the malicious abuse of process claim is dismissed.

### b)       *Section 1985 Conspiracy*

Gordon's memorandum also asserts a claim under 42 U.S.C. § 1985(3). Such a claim requires the plaintiff to allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007). In addition, the plaintiff must show that the alleged conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999) (internal quotation marks omitted).

In addition to the fact that Gordon offers only the conclusory allegation that he was conspired against "because he is of minority race" (Pl. Opp. ¶ 3), his claim fails because of the intracorporate conspiracy doctrine. Gordon claims that "there was some sort of conspiracy between the N.Y.C. Police Department and its employees to unlawfully detain him." (Id.) However, "[u]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008); Nassau County Employee "L" v. County of Nassau, 345 F.Supp.2d 293, 304-05 (E.D.N.Y.2004). Although "[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity," Gordon has not alleged that Officer Peralta acted out of any

personal interest distinct from those of the police department in general.  Quinn v. Nassau County Police Dep't, 53 F.Supp.2d 347, 360 (E.D.N.Y.1999).

Accordingly, any claims against Officer Peralta under § 1985(3) are dismissed.

### c)      Equal Protection

To the extent Gordon's complaint makes reference to any equal protection violations, they are wholly conclusory and unsupported, and are hereby dismissed.  "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  Here, Gordon has offered nothing beyond the occasional bare assertion that the actions alleged were taken because he "is of a minority race." He hasn't alleged any disparity in treatment between himself and another person, and his papers lack any facts related to his race beyond his identification of himself as a minority.  Any equal protection claim is dismissed.

### d)      Claims against ADA Hilda Mortensen and Related to Gordon's Conviction

Finally, the Court observes that Gordon's submissions contain repeated allegations directed at the Assistant District Attorney who prosecuted his case, Hilda Mortensen, related to alleged improprieties in Gordon's grand jury indictment, trial, and conviction—including various violations of criminal procedure laws, use of a "defective indictment," and presentation of tainted evidence—all of which Gordon claims resulted in an illegal conviction and sentence. (Compl. ¶¶ 38-41, 46, 50.)  However, notwithstanding having filed many papers in this case, including an amended complaint that added several defendants, Gordon has never named her as a

defendant.  Given Gordon's clear understanding of how to add defendants to the cases he files, the Court is hesitant to infer that this complaint brings claims against Mortensen.

In any event, to the extent Gordon attempts to assert claims against Mortensen, they are barred by absolute prosecutorial immunity.  See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001).  Additionally, any claims against Mortensen (or others) that amount to challenges to the validity of Gordon's conviction are barred by the rule in Heck v. Humphrey, 512 U.S. 477 (1994), which holds that a plaintiff may not use § 1983 as a vehicle for bringing a claim that "would necessarily imply the invalidity of his conviction or sentence."  Id. at 487; see Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005); Channer v. Mitchell, 43 F.3d 786 (1994); Jackson v. County of Nassau, 2010 WL 335581, at *7-8 (E.D.N.Y. 2010).  Although Gordon's custody status at the present moment is unclear from the docket sheet, it is clear that he filed his complaint, amended complaint, and opposition papers while incarcerated for the conviction at issue in this case.  He thus had available to him at that time the avenues of both direct appeals and habeas review if he wished to challenge the validity of his conviction.  Because he has not asserted that his conviction was ever vacated, he is barred from seeking to imply the invalidity of his conviction through a § 1983 action.  See Browdy v. Karpe, 2004 WL 2203464, at *5-8 (D. Conn. 2004), aff'd, 131 Fed. App'x 751, 753 (2d Cir. 2005); Amaker v. Coombe, 2002 WL 523388, at *17-18 (S.D.N.Y. 2002).

Accordingly, any claims against ADA Mortensen or any other defendant that are premised on the assertion that Gordon's September 2009 trial and conviction were unconstitutional or otherwise invalid are dismissed.

### 5.     State law claims

The City and Officer Peralta have moved to dismiss any state law claims against them based on Gordon's failure to file a notice of claim.  <u>See</u> N.Y. Gen. Mun. L. §§ 50-e, 50-k(6); <u>Khaja-Moinuddin v. City of New York</u>, 2010 WL 3861003, at *7 (E.D.N.Y. 2010).  Gordon does not appear to contest this proposition in this opposition papers.  Accordingly, to the extent the complaint asserts any state tort law claims against Officer Peralta or the City, they are dismissed.

### III.    JUDGE BLOOM'S REPORT AND RECOMMENDATION

On January 28, 2011, Gordon amended his complaint to add four private defendants:  TD Bank, Elliot Lopez, Curtis Herbert, and Isaac Duncan.  On July 28, 2011, after receiving a request from Gordon for assistance in serving process on these newly added defendants, Magistrate Judge Lois Bloom issued an R&R recommending that the Court dismiss the amended complaint against these four defendants because Gordon did not properly allege that they acted under color of state law, as required for actions under § 1983.  Gordon filed objections pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1) in a submission dated August 31, 2011.

In reviewing an R&R, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b); see also Edwards v. Fischer, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006); The European Community v. RJR Nabisco, Inc., 134 F. Supp. 2d 297, 302 (E.D.N.Y. 2001).  Upon a review of the record and Gordon's objections, the Court adopts Magistrate Judge Bloom's R&R with the following elaborations, and dismisses all claims against the remaining four defendants.

### A.    Discussion

Gordon's lengthy submission of objections consists mostly of recitations of legal principles, with comparatively little addressed to the particulars of the instant case or to the R&R.  Gordon appears to argue that his amended complaint properly pleads that defendants Lopez, Duncan, and Herbert engaged in a conspiracy with state actors, thus rendering their conduct "under color of law" and subject to § 1983.  However, apart from Gordon's conclusory iterations of the legal standards for state action, his allegations and arguments remain substantially the same as those already addressed and rejected in the R&R.  Although he

repeatedly makes the bare assertion that the private defendants participated in "joint activity" with state actors, the only facts underlying this claim are that Lopez provided false information to the police based on "mere speculations" (Pl. Obj. at 10); that Duncan gave "false and misleading information" to the bank, the police department, and the District Attorney's office (id. at 15); and that Herbert offered false testimony to the grand jury in exchange for the charges against him being dropped (id. at 21).  As to TD Bank, Gordon argues only that it "creat[ed] or perpetuat[ed] the policy or custom under which the unconstitutional practice of Mr. Lopez occurred," and that it was grossly negligent in supervising its employees.  (Id. at 11.)

It is true that a court may find that a private individual acted under color of state law for purposes of § 1983 where the complaint sets forth specific facts indicating that "the private actor operate[d] as a willful participant in joint activity with the State or its agents." Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 313 (2d Cir. 2003) (internal quotation marks omitted).  However, a complaint premised on this "joint participation theory" of state action cannot rest on conclusory assertions that the private individuals acted in concert with state officials, but must allege facts demonstrating that private actors and agents of the state "carried out a deliberate, previously agreed upon plan," or that their actions "constitute[d] a conspiracy or meeting of the minds." Dahlberg v. Becker, 748 F.2d 85, 92 (2d Cir. 1984); see Rosen v. County of Suffolk, 53 Fed. App'x 578, 580 (2d Cir. 2002) ("[I]t is not enough to make a conclusory allegation that the private and state parties acted in concert, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor."); Valez v. City of New York, 2008 WL 5329974, at *3 (S.D.N.Y. 2008).

To that end, as explained by the Magistrate Judge, the mere fact that a private person falsely reported criminal conduct to government officials is insufficient to establish liability as a

state actor under § 1983.  See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 939 n.21 (1982)

(private party's "mere invocation of state legal procedures" does not render that party a state

actor under § 1983); Dahlberg, 748 F.2d at 93 (allegation that private defendant submitted false

affidavit to state court that led to plaintiff's arrest did not make the defendant a state actor under

§ 1983); Rosen, 53 Fed. App'x 578 (allegations that private individual filed false petitions

seeking orders of protection and false criminal complaint were insufficient to establish state

action under § 1983); Schneider v. Tretola, 8 F.3d 809 (1st Cir. 1993) (table) ("The defendants,

all private persons, cannot be held liable under 42 U.S.C. § 1983 for their alleged acts in

employing 'false representations and phony process to induce the policemen to falsely arrest'

and imprison plaintiff because the private defendants' actions do not constitute 'state action,' a

requisite of a § 1983 cause of action."); Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 221

(E.D.N.Y. 2010) (allegation that private defendants "provided false information to law

enforcement officials who then interrogated and arrested" the plaintiff is insufficient to establish

state action); Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005); Vazquez v. Combs,

2004 WL 2404224, at *4 (S.D.N.Y. 2004).  Here, Gordon asserts only that the private defendants

falsely accused him of criminal activity to state officials, which does not establish that they acted

under color of state law.

        As to the claim related to Herbert's grand jury testimony, "there are two reasons why §

1983 does not allow recovery of damages against a private party for testimony in a judicial

proceeding."  Briscoe v. LaHue, 460 U.S. 325, 329 (1983).  First, witnesses in judicial

proceedings are protected by absolute immunity against damages claims based on the substance

of their testimony.  See id. at 334 (concluding that "it is clear that § 1983 did not abrogate the

absolute immunity existing at common law" for witnesses); San Filippo v. U.S. Trust Co. of

New York, Inc., 737 F.2d 246, 254 (2d Cir. 1984) (extending Bricoe immunity to grand jury testimony).  Second, an allegation that a private individual gave false testimony in a judicial proceeding, without more, does not establish state action for purposes of § 1983.  See Briscoe, 460 U.S. at 329-30 ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'"); Flores v. Levy, 2008 WL 4394681, at *7 (E.D.N.Y. 2008) ("[T]he fact that plaintiff alleges that [a private actor] perjured herself as a witness at his trial does not transform her into a state actor."); Cipolla v. County of Rensselaer, 129 F. Supp. 2d 436, 447 (N.D.N.Y. 2001); Elmasri v. England, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.").

Moreover, the fact that Herbert may have agreed to testify in exchange for the dismissal of the charges against him is not a sufficient allegation that he conspired with state actors to deprive Gordon of his constitutional rights.  "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir.1992)).  The plaintiff's submissions contain no such facts.  Indeed, Gordon's allegations emphasize that Herbert was pursuing a personal vendetta against him, (Compl. ¶ 59), and he does not offer any facts demonstrating that the prosecutor was even aware of any perjury on Herbert's part.  The only allegation offered to show concerted action with the state is that Herbert offered to testify against Gordon in exchange for his own criminal case being dismissed. (Pl. Obj. at 21.)  There is nothing inherently improper in a witness cooperation agreement and,

without more, these allegations do not demonstrate a conspiracy with a state actor sufficient to establish that Herbert acted under color of state law.

Finally, as to TD Bank, Gordon has offered no facts demonstrating that it acted under color of law.  The vague allegation that the private bank had a "policy or custom" under which its employees' actions occurred, or that it was negligent in supervising its employees, does not make it a state actor for § 1983 purposes, especially since the Court has already determined that its employees did not act under color of state law in reporting information to the police.

In sum, Gordon's submissions do not rise above "merely conclusory allegation[s] that a private entity acted in concert with a state actor," which "do[] not suffice to state a § 1983 claim against the private entity."  <u>Ciambriello</u>, 292 F.3d at 324 (2d Cir. 2002).  The Court thus agrees with the Magistrate Judge that the § 1983 claims against the private defendants must be dismissed for this reason.

Even if the Court were to find that one or more of these defendants acted under color of law, there is an alternative basis for dismissing Gordon's § 1983 claims:  This Court held above that Gordon's conviction barred him from bringing § 1983 challenges to both arrests related the events at TD Bank, or to the prosecution in 2008 that led to his conviction.  The Court also held that Gordon alleged no post-arraignment deprivation of liberty that could serve as the basis of a malicious prosecution claim premised on the November 2007 arrest, and that Gordon failed to state any other claims under § 1983.   As Gordon's claims against these four defendants are premised only on their alleged involvement in Gordon's arrests, prosecution, and conviction for the events at TD Bank, the dismissal holdings of this Court's prior order would apply equally to them.  There are no allegations that any of these defendants were involved in the separate false imprisonment and unreasonable detention claims that remain against Officer Peralta.

Finally, the Court notes that to the extent Gordon's complaint contains fleeting citations to New York Civil Rights Law § 40-c; the state due process clause, N.Y. Const., art. 1, § 6; or the state equal protection clause, N.Y. Const., art. 1, § 11, he has not articulated such claims with any clarity. Additionally, in his objections to the R&R, he did not argue that he had asserted any state law claims against the private defendants that should be retained. Accordingly, any state law claims, if asserted here, are dismissed.

IV.     **CONCLUSION**

In sum, all claims against the City of New York are dismissed; and all claims against Officer Peralta are dismissed with the exception of claims for false imprisonment and unreasonable detention based on Gordon's allegations that he was unlawfully detained from November 2-4, 2007. The claims against TD Bank, Elliot Lopez, Curtis Herbert, and Isaac Duncan are dismissed in full.

SO ORDERED.

Dated: Brooklyn, New York
       March 29, 2012

                                          _____/s/_____
                                          Carol Bagley Amon
                                          Chief United States District Judge

25